IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | Case Nos. | CV-05-302-S-BLW |
| Plaintiff-Respondent, | ) | | CR-03-26-S-BLW |
| v. | ) | | |
| | ) | **ORDER** | |
| THERESA FRANCES WILSON, | ) | | |
| | ) | | |
| Defendant-Petitioner. | ) | | |
| | ) | | |

Pending before the Court is Defendant's Motion Pursuant to 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 1 in CV-05-302-S-

BLW).[1]  Having reviewed the Motion and the record and being otherwise fully

informed, the Court enters the following Order.

## REVIEW OF 28 U.S.C. § 2255 MOTION

### A.    Background and Summary of Claims

Defendant, a registered nurse, was charged in an Information (Docket No. 1)

with two counts of tampering with consumer products in violation of 18 U.S.C.

§ 1365(a)(4).  The charges arose out of Defendant's tampering with vials of

---

[1]  Unless otherwise indicated, all further docket references shall be to the criminal case, CR-03-26-S-BLW.

**Order - 1**

Valium and Ativan in the pediatric unit at St. Alphonsus Medical Center. She

removed the drugs from the vials and substituted saline solution. The tampering

was discovered when another nurse unwittingly administered those drugs to a 14-

year old patient who was being treated for seizure activity. The patient then

experienced additional seizures, was transported to St. Luke's Hospital, and later

died of cardiac arrest. The autopsy report identified the cause of death as

Wellbutrin poisoning.[2]

Defendant pled guilty to both counts pursuant to a Plea Agreement (Docket

No. 2) in which she agreed to a base offense level of 25 pursuant to U.S.S.G.

§ 2N1.1. The Presentence Report recommended a 2-level upward adjustment for

abuse of a position of trust pursuant to U.S.S.G. § 3B1.3, a 2-level upward

adjustment for vulnerable victim pursuant to U.S.S.G. § 3A1.1, and a 3-level

downward adjustment for acceptance of responsibility resulting in an offense level

of 26 and a sentencing range of 63 to 78 months. Defendant did not object to that

computation.

It was apparent from the Plea Agreement that the parties did not agree on the

application of the special offense characteristics of § 2N1.1 and its cross reference

---

[2] This abbreviated summary of the undisputed facts was gleaned from the Plea
Agreement (Docket No. 2) and the Presentence Report.

**Order - 2**

to offenses resulting in death.  Plea Agreement, p. 5 (Docket No. 2).  In its
Sentencing Memorandum, the Government argued that the cross reference to §
2A1.2 for second degree murder was appropriate.  Application of that guideline
would have yielded an offense level of 34 and a guideline range of 151 to 188
months.  Sent. Mem., pp. 15-16 (Docket No. 11).  An evidentiary hearing was
scheduled  to determine whether the cross reference to § 2A1.2 or any of the
special offense characteristics were applicable.

At the sentencing hearing held before Visiting Judge Ralph R. Beistline, the
parties informed the Court that they had stipulated to the admission of summaries
of the Government's expert witness's testimony and to the application of special
offense characteristic § 2N1.1(b)(1)(C) in lieu of the cross reference to § 2A1.2.
That characteristic provided for an increase of 3 levels reflecting a degree of injury
between (A) permanent or life-threatening bodily injury and (B) serious bodily
injury.  The resulting offense level was 29 with a range of 87 to 108 months.[3]

After hearing statements from the victim's family and Defendant and
argument of counsel, Judge Beistline sentenced Defendant to a term of
imprisonment of 108 months.  Defendant did not appeal her sentence or conviction.

---

[3]  The Court has listened to the tape of the sentencing hearing held on September 12,
2003.

**Order - 3**

Just prior to the expiration of the one-year statute of limitations, Defendant moved for an extension of time in which to file a § 2255 Motion which the Court granted.  Docket No. 21.  Defendant thereafter filed her § 2255 Motion alleging (1) that her sentence based on enhancements not found by a jury beyond a reasonable doubt was unconstitutional under the rules of *Apprendi,*[4] *Blakely,*[5] and *Booker;*[6] and (2) that her counsel was ineffective for failing to acknowledge that he was unfamiliar with the federal sentencing guidelines, failing to present mitigating evidence regarding her psychiatric history, and failing to have her family and friends testify on her behalf.[7]

Notwithstanding the Order granting the extension of time, because the § 2255 Motion was filed beyond the one-year statute of limitations, the Clerk's Office inadvertently sent the Government a Notice of Filing rather than a Notice of Filing with a briefing schedule.  Therefore, the Government has not filed a response.

## B.    Standard of Law

---

[4] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[5] *Blakely v. Washington*, 542 U.S. 296 (2004).

[6] *United States v. Booker*, 543 U.S. 220 (2005).

[7] The Court notes that it has read letters from several of Defendant's family members received approximately the same time the § 2255 Motion was filed.

Order - 4

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss the § 2255 petition at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and petition, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes

**Order - 5**

following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). However, where, assuming the truth of the specific factual allegations when viewed against the record, Petitioner states a claim upon which relief could be granted, an evidentiary hearing is required to resolve the factual dispute before the Court can make a determination on the merits. *See United States v. Leonti*, 326 F.3d 1111, 1116 (2003).

## C.   Discussion

### 1.   *Apprendi/Blakely/Booker* Claim

In *Apprendi*, the Supreme Court held that, other than the fact of a prior conviction, any fact that increases a defendant's sentence beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. The Ninth Circuit thereafter determined that the relevant statutory maximum for *Apprendi* purposes was the maximum set forth in the United States Code. *See United States v. Hernandez-Guardado,* 228 F.3d 1017, 1026-27 (9th Cir. 2000).

**Order - 6**

*Blakely* reiterated the *Apprendi* rule but held that the statutory maximum is not the maximum under the statute of conviction but rather "the sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 301-02 (emphasis in original). The Supreme Court subsequently extended the rule of *Blakely* to the federal sentencing guidelines. *Booker*, 543 U.S. at 244. After finding that the mandatory nature of the guidelines violated the Sixth Amendment right to trial by jury, the Court then remedied the constitutional defect by rendering the guidelines advisory. *Id.* at 245-46. It further held that the sentencing court must consider the guidelines together with the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* at 258-61.

It is apparent from the tape of the sentencing hearing that Defendant stipulated to all of the facts on which her sentenced was based. However, even if she had not so stipulated, her claim would fail.

Defendant was convicted in 2003, three years after the *Apprendi* decision but prior to the *Blakely* and *Booker* decisions. Because Defendant's sentence of 108 months was less than the statutory maximum of ten years under 18 U.S.C. § 1365(a)(4), it was not necessary under the then current law to submit facts in support of the enhancements to a jury for proof beyond a reasonable doubt. While *Blakely* and *Booker* have significantly changed the sentencing landscape and would have possibly impacted Defendant's sentence, neither case is retroactive to cases on collateral review. *See United States v. Cruz*, 423 F.3d 1119, 1119-20 (9th Cir.

**Order - 7**

2005) (holding that "*Booker* does not apply retroactively to convictions that

became final prior to its publication") and *Schardt v. Payne*, 414 F.3d 1025, 1036

(9th Cir. 2005) (concluding that *Blakely* does not apply retroactively to cases on

§ 2254 habeas review).  Accordingly, this claim is subject to summary dismissal.

### 2.    Ineffective Assistance of Counsel

The well-established two-prong test for evaluating ineffective assistance of

counsel claims is deficient performance and resulting prejudice.   *See Strickland v.*

*Washington*, 466 U. S. 668 (1984).  More specifically, to prevail on an ineffective

assistance of counsel claim, a defendant must show that counsel's performance

"fell below an objective standard of reasonableness" and that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id.* at 688, 697.  *See also Bell v. Cone*, 535

U.S. 685, 695 (2002).  Mere conclusory allegations are insufficient to state a claim

of ineffective assistance of counsel.  *See Shah v. United States*, 878 F.2d 1156,

1161 (9th Cir. 1989).

In evaluating an ineffective assistance of counsel claim, the Court may

consider the performance and prejudice components of the *Strickland*  test in either

order.  *Strickland*, 466 U.S. at 697.  Furthermore, the Court need not consider one

component if there is an insufficient showing of the other.  *Id.*

**Order - 8**

#### a.    Unfamiliarity with the Sentencing Guidelines

Defendant alleges that defense counsel represented that he was knowledgeable about the federal sentencing guidelines and "point system" when in actuality he was not.  Defendant further alleges that had defense counsel indeed been knowledgeable regarding the federal sentencing system, her sentence "may have been less."

Defendant has not alleged the circumstances surrounding defense counsel's alleged representation that he was knowledgeable about the sentencing guidelines or the basis for her allegation that he was not.   Furthermore, she has not indicated how a greater knowledge of the guidelines would have resulted in a lesser sentence.  Rather, Defendant's vague and conclusory allegations are entirely speculative and unsupported by the record.

Even the most experienced attorney would have been unlikely to have successfully argued against application of the vulnerable victim enhancement or the abuse of position of trust enhancement.

U.S.S.G. § 3A1.1(b) provides for a two-level enhancement where a defendant knew or should have known that a victim of the offense was a vulnerable victim.  A vulnerable victim includes a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to

**Order - 9**

the criminal conduct." *Id*., comment. (n. 2).  Given that Defendant worked in a pediatric unit, *any* potential victim would have been both young and injured or ill. The actual victim in this case was not only young and ill, he was seriously ill.

U.S.S.G. § 3B1.3 provides for a two-level enhancement if a defendant abused a position of trust or used a special skill "in a manner that significantly facilitated the commission or concealment of the offense."  "Special skill" is a skill not possessed by members of the general public that requires substantial education, training, or licensing.  *Id*., comment. (n.4).  Clearly, Defendant's position as a registered nurse in the pediatric unit qualified her as such and enabled her to both commit and conceal the offense of tampering with the drugs in the unit.

The issue of whether to apply any of the special offense characteristics or the cross reference contained in § 2N1.1 was more problematic to the Court and counsel primarily because of the causation issue.[8]

As stated above, the parties stipulated to the application of § 2N1.1(b)(1)(C) and the admission of a summary of the testimony of the Government's medical

---

[8]  The Presentence Report did not assess any points for this enhancement.  Based on the then available information, it was impossible for the Probation Officer to determine whether Defendant's tampering with the medications administered to the victim caused him to sustain any type of injury. PSR ¶ 49.  The Presentence Report anticipated the presentation of additional evidence at the sentencing hearing.  *Id.*  The official cause of death , Wellbutrin poisoning, was determined prior to the discovery of the tampering.  The issue then became to what extent did the resulting unavailability of the proper treating drugs cause or contribute to the cause of death or to what degree did it caused injury.

**Order - 10**

expert.[9]  Defense counsel explained at the hearing that he had discussed the

stipulation with Defendant and her family and felt that it would be close to what

the Court would find.  Prior to that stipulation, the Government had argued that the

evidence supported the application of the cross reference to second degree murder.

Implicit in Judge Beistline's comments at sentencing was his apparent belief that

the cross reference was justified.  He referred on more than one occasion to the

"mercy" of the victim's family that was saving Defendant five years of her life and

that Defendant would have had a much higher guideline range absent the

stipulation.  Nevertheless, in large part due to the willingness if the victim's family

to agree to the stipulation, Judge Beistline found that a sentence at the high end of

the stipulated range was appropriate.

        The Court finds nothing in the record to indicate that defense counsel was

unfamiliar with the guidelines.  Furthermore, given that the Government was

urging a sentencing range of 151 to 188 months and defense counsel negotiated a

stipulation reducing the range to 87 to 108 months, the Court finds that Defendant

could not establish prejudice even if defense counsel's alleged unfamiliarity with

---

[9]  One of the submissions was a letter from the Government's expert forensic toxicologist
who opined that "within reasonable toxicological certainty, the tampering significantly affected
the successful control of the seizures. . . ."  Docket No. 16.

**Order - 11**

the sentencing guidelines affected his performance.[10]

### b.     Failure to Present Evidence of Psychiatric Condition

Defendant alleges that defense counsel was ineffective for failing to present evidence of her undiagnosed bi-polar condition and request a psychiatric evaluation.  She further alleges that had defense counsel presented mitigating evidence of her psychiatric history as it related to her crime, her sentence "may have been different."  Again, Defendant's vague and conclusory allegations are entirely speculative and unsupported by the record

The Court was well aware of Defendant's bi-polar condition.  The Presentence Report detailed Defendant's mental and emotional health and substance abuse history.  It specifically referred to the psychiatric evaluation performed at West Valley Medical Center in which she discussed improperly obtaining medication to help with her insomnia problem and a psychological evaluation performed at the Walker Center In-Patient Drug Alcohol Program in which she was first diagnosed with bi-polar disorder in part based on her insomnia. PSR ¶¶ 64-92.  Furthermore, in her allocution Defendant herself advised the Court

---

[10]  The Court notes that Judge Beistline addressed Defendant personally several times during the sentencing hearing.  He stressed with her the importance of understanding the guidelines.  She stated that she had read and discussed the PSR with her attorney and that she had no questions.  Judge Beistline twice reviewed the stipulated guideline calculation with Defendant.  She stated both times that she understood the calculation.

**Order - 12**

of her previously undiagnosed bi-polar disorder and her history of self-medicating both pain and insomnia.

Defendant has not alleged what further information defense counsel could have provided to the Court or what a further evaluation would have shown.  It was very apparent to the Court that the tampering resulted from Defendant's attempt to self-medicate rather than to cause harm to others. Indeed, even if there had been further information that defense counsel could have presented in support of a motion for downward departure, whether or not to grant such a departure would have been entirely within the Court's discretion.  Accordingly, she has not properly alleged either deficient performance or resulting prejudice.

### c.     Failure to Have Family and Friends Testify

Defendant alleges that defense counsel's failure to have her family and friends testify in her behalf possibly gave the Court the impression that the her family and friends were unwilling to testify on her behalf.  Defendant does not allege what effect that impression would have had on Judge Beistline or the sentence.  Additionally, the Court finds that this claim is too vague and speculative.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion

Order - 13

Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket

No. 1 in CV-05-302-S-BLW and Docket No. 24 in CR-03-26-S-BLW) is

DISMISSED.

IT IS FURTHER HEREBY ORDERED that Case No. CV-05-302-S-BLW

is DISMISSED with prejudice in its entirety.

DATED:  **May 30, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Order - 14**